ANNA M. PETERS AND CHILD, plaintiffs in error, v. THALIA PETERS, et al., defendants in error.

(Atlanta, June Term, 1870.)

REMOVAL OF CAUSES—DIVERSE CITIZENSHIP—PREJUDICE OR LOCAL INFLUENCE—PARTIES CLAIMING PRIOR LIENS—FINAL DETERMINATION OF CONTROVERSY.*— Mathew B. Peters had a wife, Thalia Peters, and three minor children, in New York. A total divorce was adjudged between them in the proper Court in that State, and it was further adjudged that he pay to his divorced wife ten dollars per week during their joint lives, as alimony. Mathew B., afterwards married another wife, Anna M. Brown, in Georgia, who had one child, when he became a lunatic, and Colonel Best was appointed his guardian.

Thalia, his first wife, a citizen of New York, filed her bill in equity in the Superior Court of Bibb county, Georgia, setting forth the judgment for alimony, and charging that it was wholly unpaid, and praying that the lands of her late husband be sold by the guardian, and the money raised applied in paying off her claim. Mathew B. Peters died pending this suit, and Best became his administrator.

Anna, his last wife, commenced her proceeding in the Court of Ordinary of Bibb county, to have a year's support allowed her and her minor child out of the estate, in preference to all other liens.

---

*REMOVAL OF CAUSES—BILL TO MARSHAL ASSETS—COLLATERAL SUIT—FINAL DETERMINATION OF CONTROVERSY.—When an administrator files a bill to marshal assets against creditors, some of whom are proceeding to enforce their claims at law and seeks to enjoin the common-law suits alleging conflict in the claims, and the judge grants the injunction, subject to the limitation that "the said several creditors and said administrator go on and litigate the several claims now in process of litigation for the purpose of ascertaining the amounts due said creditors, and for that purpose only, and that as to the priority and dignity of said claims, and as to the rights of said creditors to claim payment out of said funds in the hands of the administrator, that the same be reserved and held up for future determination of this court and that

The Commissioners, by their return, allowed her $1,800 00. And Thalia, the first *wife, appeared in Court and controverted Anna's right. The Court of 'Ordinary refused to approve the return of the Commissioners, on the ground that the three .minor children of Thalia were not provided for by the return, and on the further ground that Thalia's judgment, by the law of New York, is a special lien on the estate, higher than the. claim of Anna, to a year's support.

Best, the administrator, then filed his amended answer to Thalia's bill against him, in the nature of a cross-bill against them both, and against various other defendants claiming to have the highest lien on the fund, for bills for the lunatic while in the asylum, bills for nurses and attendants, doctor's bills for services in his last illness, burial expenses, etc.  .

Thalia Peters then filed her affidavit, stating that she has reason to, and does believe, that from prejudice, or local influence, she will not be able to obtain justice in the State Court, and prayed that the case pending between the said Anna and herself be transferred to the Circuit Court of the United States:

*Held,* That the Court below erred in granting the order of transfer, as there cannot, in⁵ this case be a "final determination of the controversy, so far as it concerns her," in the Federal Court, unless all the other parties to the litigation, claiming prior liens upon the funds of the estate, were before the Court. Warner, J., dissents.

CONTINUANCE—ABSENCE OF COUNSEL.—When one of the three attorneys of a party is sick, and. the other two are at another Court, this Court will not continue the cause for their absence. (R. See Report.)

Removal of Causes to United States Courts. Before Judge Cole. Bibb Superior Court. November Term, 1869.

This cause is 'fully reported in the opinions.

(When the cause was called here, defendants in error asked for a continuance, because DeGraffenried was sick, and Lyon and Irvin were at another Court, but the continuance was refused.).

B. Hill, E. F. Best, for plaintiffs in error.
Lyon DeGraffenried & Irvin, by Lanier, for defendants.

By the Court—BROWN, C. J., delivering the opinion.

The record in this case discloses the fact that Mathew B. Peters, while a resident of the State of New York had a wife

the judgment that said creditors may obtain against said administrator shall not create any personal liability as to him, but against the assets of the estate only:" one of said creditors who is a nonresident cannot remove his .common-law suit to the circuit court of the United States. Such suit is collateral to the equity case. Burts *v.* Loyd, 45 Ga. 104. In this case, the court said:  " 'A final determination of the controversy, so far as it concerns him,' cannot be made in that court 'without the presence of the other defendants as parties in the cause,' made by the bill. And the administrator cannot carry them there in any new bill, he may find it necessary to file in that court.   Congress certainly could not have intended to so incumber the administration of estates, in all the states, as would be the result of permitting every nonresident creditor of an insolvent estate to have his part of the case made by the administrators' filing a bill to marshal assets removed to the United States courts.   The present case is much stronger against the removal than Peters *v.* Peters, 41 Ga. 242."

41 G R—13

whose name was Thalia Peters, and that they had, as the offspring of their marriage, three minor children. Mrs. *Thalia Peters, for some cause that does not appear, brought her action for divorce, in the proper Court, in the State of New York, and, by the judgment of the Court, a total divorce was granted and the Court decreed that the said Mathew B. Peters pay to the said Thalia ten dollars per week, to be paid weekly in advance, during their joint lives, as alimony. Subsequently to the divorce, Mathew B. Peters came to Georgia and intermarried with one Anna Brown, who had one child as the offspring of their marriage. Mathew B. acquired an interest in two plantations in Georgia, and became a lunatic, and Colonel E. F. Best, of this State, was appointed his guardian. He was carried to the Lunatic Asylum of this State, and there confined. At this stage of the case, Mrs. Thalia Peters, who was, and still is, a citizen and resident of the State of New York, filed her bill in the Superior Court of Bibb county, in this State, on the equity side of said Court, against Best, as guardian of her late husband, setting forth the fact of their intermarriage and divorce, and the judgment in New York in her favor for alimony, and praying that the land in Georgia, or so much thereof as might be necessary for that purpose, be sold by Best, the guardian, and that the proceeds thereof be paid to her in satisfaction of her claim for alimony, which she charged remained wholly unpaid.

The guardian answered the bill, setting forth the property of his ward, to the best of his knowledge, and stating the fact that he was incurring heavy expenses for his ward's bills in the Lunatic Asylum, which he had no money to pay, and he averred that property must be sold to meet these expenses. He also set forth the fact that the present wife and child of the said Mathew B., claimed a homestead and support out of the lands belonging to the estate of his ward, and prayed that Mrs. Anna Peters and her child be made parties. To this answer, in the nature of a cross-bill, Mrs. Anna Peters added her answer admitting the facts, and stating that she had no separate estate, and that she claimed a support for herself and child, and a homestead out of the estate of her said husband.

*At May Term, 1869, Best, the guardian, filed an amended answer, in the nature of a cross-bill, setting forth that he had been authorized by a decree of the Court to sell the estate, and stating that he had declined to do so, as he could not get such price for the lands, as, in his opinion, would justify the sale. He then set up the further fact that, on the 16th day of August then last, his said ward died; and that he, as guardian, had, in conformity to law, become his administrator; and that he had obtained from the Court of Ordinary an order to sell the real estate. He then admitted the divorce in New York, and the judgment for $520 00 per

Peters v. Peters

annum in favor of the said Thalia Peters for· her alimony, which he stated she claimed as a special lien upon the estate of the said Mathew B. He also set forth the fact that Mrs. Anna Peters, the widow, had filed her application in the Court of Ordinary of Bibb county, claiming the year's support allowed by law, for herself and her minor child, and that commissioners had been appointed, who had set apart, by their return, $1,800 00 for that purpose. But he said that, at the instance of said Thalia, the Ordinary had disallowed the return, on the ground that no provision had been made by the return for her three minor children, who were the children of the deceased; and upon the further ground that the judgment of the New York Court is a specific lien on the estate, and that the rights of the said Anna and her child, are subject to the prior lien of the said Thalia. That from this decision of the Court of Ordinary, an appeal has been taken to the Superior Court, which is pending; and that counsel for the said Anna and her child, have notified him of their intention to apply for a homestead out of the estate of the deceased husband, and that the counsel for the said Anna insist that she and her child are entitled to the year's support and the homestead, before any of the debts of the estate are paid. He also stated that he is informed that there is a claim for a large amount set up by E. E. Brown, the father of the said Anna, for board of the said lunatic, and his wife and child, and for money advanced to pay his burial expenses, etc. That there is also a bill due the Superintendent of the Lunatic *Asylum for board and treatment of said lunatic while he was an inmate of the Asylum, and that there is a bill due one Hemphill, for services as nurse and attendant of the said Mathew B. for several months previous to his death. That there are also bills due Doctors Magruder and Hall for medical services in attending the said Mathew B. prior ·to his death, and a bill to Harris, Clay & Company for medicines. And that there was a judgment for fifty dollars against himself as guardian, and another against him as administrator, in favor of Kate Smith for services rendered Mrs. Anna Peters during the lifetime of her ·husband, and that there was also a bill due himself for professional services (as an attorney,) for the said deceased.

He then averred the insolvency of the estate, and prayed the direction of the Court in its administration. And he further prayed that all these conflicting claimants be made parties, and that they be enjoined from further proceedings till the judgment of the Court, setting their respective rights, and directing the distribution of the estate according to the legal priorities between the parties. The injunction was granted as prayed, enjoining all the claimants from further proceeding till the order of the Court in the premises.

On the 18th day of December, 1869, the said Thalia made

her affidavit before a Notary Public of Bibb county, stating that the suit between her and the said Anna is pending in Bibb Superior Court, that the amount involved exceeds the sum of five hundred dollars and costs, and that she has reason to believe, and does believe, that, from prejudice or local influence, she will not be able to obtain justice in the State Court, and therefore, prays that the suit be removed into the next Circuit Court of the United States for the Southern District of Georgia. Upon the hearing, the Judge passed an order transferring the case to the United States Court, and staying all further proceedings in the State Court, and this decision is assigned as error.

Is this one of the class of cases contemplated by the Act of Congress, passed 27th July, 1866, (14 Statutes at Large, 306,) which may be transferred to the United States Circuit *Court, upon the affidavit of one of the defendants who is a citizen of another State? I think not.

If this had been an application to transfer the bill in equity, filed by Mrs. Thalia Peters, against Best, the guardian, now the administrator, to set up her claim against the estate, I do not say that might·not have been done, and if the original bill had been transferred it might possibly have carried with it, the answer and cross-bill and answers, as incidents springing out of the original bill.

But this was neither asked for by Mrs. Thalia Peters, nor was it ordered by the Court. She asked that the proceeding or suit, commenced by Mrs. Anna Peters, to which she has made herself a party, and which is enjoined by the order upon the cross-bill of the administrator may be transferred. This case is entirely a separate suit, distinct from the bill filed by Mrs. Thalia Peters, against the guardian and administrator of her late husband, and is only incidentally connected with the original bill, by the answer of the administrator to the original bill, which is in the nature of a cross-bill. Though the transfer of the original bill might have carried with it the incident, we are very clear that the transfer of the incident does not carry with it the original bill.

The Act of Congress above referred to, provides in substance, that when any suit is pending in a State Court, to which an alien, or a citizen of another State is a party defendant, and a citizen of the State when the suit is pending is also a party defendant, the case may be transferred so far as the alien defendant or citizen of another State, who is a defendant, is concerned, on the filing of the affidavit and giving the bond and security required, if the suit is one in which there can be "a final determination of the controversy, so far as it concerns him, (the citizen of the other State,) without the presence of the other defendants as parties in the cause."

Now suppose we admit for the argument, that the transfer of the case commenced in the Court of Ordinary, by Mrs.

Anna Peters, for her year's support against the administrator of her deceased husband, carried with it to the Federal Court, the original bill filed by Mrs. Thalia Peters, against the *guardian of her late husband, for alimony, and the cross-bill filed by the administrator against both of them and a number of other creditors, holding liens of the highest dignity under our law, against the estate of the deceased husband. Can the Federal Court by any judgment, which it has power to render and execute, make a "final disposition of the controversy," so far as Mrs. Thalia Peters is concerned? That we understand to be the test. What is the controversy here, as the litigation now exists in the State Court. It is as to the legal distribution of the estate of Mathew B. Peters, deceased, among the different creditors and persons, who each claim the highest lien upon it, not a simple controversy between Mrs. Thalia Peters and Mrs. Anna Peters, as to which of them has the highest claim upon the estate of their late husband. If that were all, the Federal Court might, if it had them both and the administrator before it, as parties, make a final disposition of the controversy as to Thalia Peters.

But suppose the case is transferred as between these two ladies, that does not withdraw the bill filed by the administrator for direction from the State Court, nor does it remove into the Federal Court, that bill as against any of the other defendants.

The Act of Congress in express terms declares: "Such removal of the cause as against the defendant petitioning therefor, into the United States Court, shall not be deemed to prejudice or take away the right of the plaintiff to proceed at the same time with the suit in the State Court, as against the other defendants, if he shall desire to do so." Now suppose we order the litigation, so far as it exists between Thalia and Anna Peters, transferred, and, in the meantime, Best, the administrator, proceeds with his bill for direction and settlement of the estate, in the State Court, as against the other defendants, who have liens claimed to be of the highest dignity against the estate, and suppose when the estate is sold, it is found that those liens are large enough to cover the whole amount, and the State Court orders it distributed among them, what will be the effect of the judgment of the Federal Court? If it decides in favor of Anna, it can *not, by its judgment, compel the Court of Ordinary of Bibb county to approve the return of the Commissioners and allow her the year's support, nor can it compel the administrator to pay her the amount found to be due; for the reason that he has, pending the litigation in the Federal Court, distributed, among the other creditors of the highest lien, under the judgment of the State Court, the entire estate, leaving nothing to meet the claim. If, on the other hand, it decides in favor of Thalia, there will be no

fund out of which she can be paid, and the litigation will have been fruitless. Or, suppose the State Court shall not dispose of the fund pending the litigation in the Federal Court. How can the Federal Court, with only two of the defendants to the bill for direction and settlement in the State Court before it, properly direct the payment of the fund to one or both the claimants, without the other defendants who claim that their liens upon the estate are superior to that of either of the defendants, who are, by the transfer, carried before the Federal Court to litigate their rights, while the others are left in the State Court.

Again, to show the absurdity of this transfer, suppose when Anna and Thalia Peters appear in the Federal Court, Anna dismisses her application for the year's support, this ends the litigation in that Court, but it is not a final disposition of the controversy, by any means; because Best, the administrator, is at liberty to proceed with his bill for direction and settlement in the State Court; and the claim of Anna in the Federal Court having been dismissed, she may come in and again be made a party defendant to the bill in the State Court; and if she has the highest lien on the fund by the final decree on the bill, it would be adjudged to her by the State Court. The fact that she had dismissed her application for the year's support in the Federal Court, where she was plaintiff, would be nothing in the way of her answering the bill of the administrator in the State Court, to which she is defendant, and having her rights adjudicated at the same time with her other co-defendants.

But it must not be forgotten that this is a motion to transfer *only the litigation growing out of the application of Anna Peters for the year's support to the Federal Court, and not a motion to transfer the bill in equity, filed by Thalia Peters, against Best, guardian, or the cross-bill of Best, administrator, against both Anna and Thalia, and numerous other defendants. It could never have been the intention of Congress, that in case of a bill filed by an administrator against numerous legatees and creditors, for direction in the administration of the estate of a deceased person, a single creditor or legatee, who may chance to live in another State, by coming in and making himself or herself a defendant to the bill, can in this way transfer the whole litigation from the State Court to the Federal Court. The effect of such a ruling would be to transfer almost the entire jurisdiction of estates to the Federal Courts, as, in most cases, some one who is a proper party to the bill, resides in a different State, and could compel the transfer. The fact that the Act of Congress authorizes the plaintiff to proceed in the State Court against the other defendants, after the transfer, negatives the idea that it was the intention that the whole litigation should be transferred. And

from the very nature of things it is next to impossible, in a case like the present, where a bill is filed for direction against numerous creditors and claimants holding conflicting liens, to separate one of the defendants from the others, and finally dispose of the controversy as to that one, in another Court, without having the other claimants before that Court, so that all the conflicting claims to the fund may be considered together, and a judgment rendered which will protect the rights of all.

If the Federal Court in this case should hold that the judgment in favor of Thalia Peters in the New York Court is, under the laws of that State, a lien of the highest dignity, it does not follow that the Courts of Georgia are bound to enforce that lien, when it comes in conflict with her own laws regulating liens. The judgment rendered in New York is entitled to full faith and credit in the Courts of Georgia, but it can only be enforced in Georgia by suit. An execution issued by the New York Court could not be levied by a *sheriff in Georgia. And a New York judgment, older than a judgment rendered in a Georgia Court, would not take lien over a Georgia judgment rendered prior to the judgment in the Georgia Court upon the New York judgment. The lien is regulated, in other words, according to the date of the judgment in our own Courts. It follows, therefore, in case this ransfer is made, and the Federal Court determines that Thalia Peters has a valid judgment against her late husband which, by the laws of New York, is of the highest dignity, and would bind the defendant's property in that State, in preference to any other claim, that the Court could not still determine the whole controversy between the parties to this bill, without having the Georgia claimants to the fund before it, that the priority of all liens upon the fund may be considered and determined together, according to the law regulating liens in such cases.

I do not agree with the counsel for the plaintiff in error, that the injunction granted by the State Court in this case, was any good objection to the transfer. In such case the injunction goes up to the Federal Court with the other proceedings had in the State Court, and remains in force there till it is modified or dissolved by order of the Federal Court.

There is a broad distinction between a case where a party to a bill in a State Court, proceeds in the Federal Court in violation of an injunction, and a case like the present, where a party under an injunction in the State Court applies to that Court to grant him an order of transfer under the Act of Congress, authorizing and requiring a transfer when a proper case is made.

Nor do I think the rule of law that the Court of competent jurisdiction which first obtains control of the case, has a right to hold it till final judgment, has anything to do with this case. The very object of the Act of Congress is to compel

the transfer of a certain class of cases from one Court of competent jurisdiction in which the case is pending, to another. I but my decision upon the ground that it is impossible for the Federal Court, in a case like the present, to make a "final determination of the controversy, so far as it concerns *the party applying to have the cause removed;" and on the further ground, that the order of the Court below transfers only the suit commenced in the Court of Ordinary, in which Anna Peters is plaintiff, and Thalia Peters is defendant, which is all that is asked for by Thalia, when it is impossible for the Federal Court to fully determine and adjudicate Thalia's rights, without having the bill and answers and all the others parties who have conflicting lines upon the fund before it.

Judgment reversed.

McCAY, J., concurring.

The several Acts of Congress, upon the subject of the transfer of cases from the State Courts to the Federal Courts, are to be construed in reference to the jurisdiction. of the Federal Courts under the Constitution. These Courts have no jurisdiction over controversies between citizens of the same State.

The Act of 1789 allowed the defendant in any case, in a suit brought against him in a State Court, if he was an alien or a citizen of another State, to transfer his case. But this Act made no provision for the case of one of several defendants.

The Act of 1867 allows either the plaintiff or defendant to remove the case on complying with certain requisites. But neither does this Act provide for the case of one of several defendants or plaintiffs. And this for the plain reason that generally when a citizen of another State is either a plaintiff or defendant, joined with other plaintiffs or defendants who live in the State where the suit is pending, his rights are necessarily so blended with his co-plaintiff's or co-defendant's rights, as that the decision of them necessarily involves the decision of a controversy between citizens of the same State.

The very fact that one is a co-defendant or co-plaintiff, ordinarily involves the idea that his rights are so blended with the rights of his co-parties on the same side, that, to do justice, they must be decided together. It sometimes, however, *does happen that one is a co-plaintiff or co-defendant, under such circumstances as that it is possible to separate his controversy from that of his fellows, so that it can be settled without their presence. It was to meet this case, a rare one, that the Act of 1866 was passed.

Is this such a case? Mrs. Anna Peters, for herself and child, applied to the Ordinary of Bibb county for a year's support out of the effects of her deceased husband, Mr. Peters, in the hands of Mr. Best, his administrator. Notice was given to the administrator, and commissioners were

appointed, and they assigned to her $1800 00. When this assignment was returned to the Ordinary, Mrs. Thalia Peters, for her two children, objected, and the Ordinary revoked the assignment.

Mrs. Anna Peters and child appealed to the Superior Court, and the case, to-wit: Anna Peters and her child v. Best, the administrator, and Thalia Peters for her two children, is there pending.

Mrs. T. Peters, as guardian and next friend of her children, makes the affidavit and motion to move this appeal case to the Circuit Court. To this it was replied: 1st. That this was not such a case as one of several defendants could move. 2d. That this case had been absorbed in and was enjoined by a case in equity pending in Bibb Superior Court, to-wit: A case in favor or Thalia Peters, in her own right, filed in the life-time of Peters; but, in answer to which, Best, his administrator, had filed a cross-bill against Thalia Peters and her children, Anna Peters and her child, E. E. Brown, and various other parties, alleging that the estate could not pay all the claims, and praying that Court to settle their conflicting interests.

Were this a motion to transfer to the Circuit Court the case in equity between Mrs. Thalia Peters and Best, the administrator, I am inclined to think, though I am not clear, that the motion ought to have been granted. The filing of the answer, including the cross-bill set up therein, in which new parties are introduced into the controversy, and who are made defendants, but whose interests are all antagonistic to *Mrs. Thalia Peters, may not so alter the controversy which she has with the administrator, as set forth in her bill, as to make her other than a sole plaintiff, and such a party as, by the Act of Congress, may move his case to the Circuit Court.

But the motion, as set forth in this record, is not to move the bill, but the appeal cause from the Court of Ordinary, between Anna Peters and her child, against the administrator, Best, to which Mrs. Thalia Peters, as guardian or next friend of her children, has made herself a party.

That is the case described in her motion; that is the case mentioned in her affidavit, and that is the case transferred by the order of the Court. In my judgment that case cannot be transferred. The controversy there, is in fact, between Anna Peters and the administrator.

If it were to be transferred without the administrator, who is the principal defendant, the United States Court could give no judgment in the case at all. Thalia Peters only appears in it in the administrator's behalf. The only judgment of the Court that can be had in favor of the plaintiff, is a judgment against, not Mrs. Thalia Peters, but against the administrator, and without his presence as a party, the rights of neither Anna Peters and her child, nor Mrs. Thalia Peters

and her children can be determined, since the fund or property, in reference to which they are disputing, is legally under the control of the administrator, and may not in fact, belong to either of them, but be wholly absorbed in the settlement of other claims. This is so plain that it is not even pretended, as I understand, by our Brother Warner, that the appeal cause can be removed by itself. It is concluded by him that the motion to move the proceeding to obtain a year's support, carries with it the bill, cross-bill and the whole controversy, because the cross-bill sets up this very suit, prays equitable conveyance of it and absorbs it.

I am inclined to think, that a motion to move the bill, would carry this case, because as the bill now stands, this case is included in and has been absorbed by it. But I am not able to see how a motion to move this case includes the bill. In the bill, Mrs. Thalia Peters is the sole plaintiff, and the issues *of the bill are various, including, not only the controversy with Mrs. Anna Peters, which is this case, but controversies with various other persons, all of whom named, have a right to be heard, and would be entitled to notice.

Take for instance, the Lunatic Asylum. You transfer a case, to which that Asylum is a party, to the United States Court, by a motion made in another case to which it is not a party, of which it has no notice. It seems to me absurd to say, that a motion in a case at law, to-wit: An appeal from the Ordinary, can carry with it a bill in equity, merely because that bill includes in it, with other and distinct controversies, the appeal cause. On the filing of the cross-bill, this appeal case, this controversy about the year's support, was transferred to the equitable side of the Court, became one of the issues involved in the bill, and can only be got at, by a motion made on the equity side of the Court, in that case. It is only in that way, that the parties to the bill can get notice of the motion.

In the shape in which this motion is made, if it is to affect the bill and the parties to it, you undertake to affect the rights of parties without notice to them. By moving in a case in which they are not parties, you cannot transfer to the Circuit Court a suit in which they are parties.

It is upon this ground I place my concurrence. It is clear to me that the appeal from the Ordinary cannot be transferred to the United States Court, for the simple reason that in the appeal case, Mrs. Thalia Peters is only one of two defendants, and neither her rights nor the rights of Mrs. Anna Peters can be settled without the presence of the administrator, against whom alone any judgment can be rendered.

The motion being, as I understand it, to move that case, and that case only, and not the bill, ought to have been refused.

WARNER, J., dissenting.

It appears from the record in this case, that Mathew Peters

and his wife, Thalia Peters, were divorced by a decree of the Superior Court of the State of New York, on the 17th of *April, 1858, and by the decree of that Court, the husband, Mathew Peters, was required to pay the sum of ten dollars per week for the support of his divorced wife and her children, which alimony is alleged to be due and unpaid; that subsequent to the date of this decree of divorce, Peters came to this State and married another woman, Mrs. Anna Peters, and died, leaving Mrs. Anna Peters, his widow, and one child. After the death of Peters, Best became his administrator. Prior to the death of Peters, Mrs. Thalia Peters filed a bill to enforce the decree for alimony out of his property in this State, which suit is still pending. After the death of Peters, Mrs. Anna Peters made application to the Ordinary for a year's support for herself and child out of the property of his estate, which application was resisted by Mrs. Thalia Peters, and the return of the appraisers allowing the same, was set aside by the Ordinary, on the ground that no provision was made for the children of Thalia Peters, and that if the claim of Mrs. Anna Peters was allowed, it might defeat the claim of Thalia Peters and her children under the decree in their favor for alimony. An appeal was taken from the decision of the Ordinary to the Superior Court. After this decision of the Ordinary, in November, 1869, and whilst the appeal was pending the Superior Court, to-wit: On the 20th of December, 1869, Best, as administrator of Peters, filed his cross-bill, under the provisions of the Code, and obtained an injunction against Mrs. Thalia Peters and other defendants, in which cross-bill the facts before recited are fully set forth, as well as the respective claims of Mrs. Thalia Peters and her children, and the claims of Mrs. Anna Peters and her child, to the property of his intestate, and he also alleges that he has been notified by Mrs. Anna Peters' counsel that she intends to apply for a homestead out of the property of his intestate, and that he contends that she is entitled to the same, as well as to a year's support and dower out of said estate, before any debts due by said estate should be paid.

It is alleged in the cross-bill that the estate will be insolvent as to the allowance claimed by either of the contending parties. And he prays the direction of the Court: First, as *to the claim of said Thalia Peters and children, and the status and dignity of said judgment, and their rights under said decree. Secondly, as to the rights of said Anna Peters and her child, and that the said Thalia Peters and her children, and the said Anna Peters and her child, be required to prove and be heard upon their several claims, and that the defendants respectively be enjoined and restrained until the several matters aforesaid can be fully settled. At this stage of the case in the Court below, Mrs. Thalia Peters, one of the defendants in the cross-bill, petitioned

the Court as a non-resident of the State, to remove the cause from the State Court to the Circuit Court of the United States, under the provisions of the Act of Congress of 1866 and 1867. The bill of exceptions states, that the application was made to remove the appeal cause from the Superior Court, but that appeal cause, as we have seen, had been included in the cross-bill and made a part thereof and was enjoined, and a motion to transfer that, would necessarily transfer all the proceedings connected with it, and such was the legal effect of the motion.

The first of these Acts of Congress provides for the removal of the suit, when the suit has been instituted or prosecuted for the purpose of restraining or enjoining a non-resident defendant; or, if the suit is one in which there can be a final determination of the controversy so far as it concerns him, without the presence of the other defendants as parties in the cause; that is to say, if the non-resident defendant is restrained by an injunction, he may remove the suit; or, if the suit is one in which there can be a final determination of the controversy so far as concerns him, without the presence of the other defendants as parties in the cause, then he may remove it into the Circuit Court. The amendatory Act of 1867, is much broader in its terms, and provides that where a suit is now pending, or may hereafter be brought in any State Court in which there is a controversy between a citizen of the State in which the suit is brought and a citizen of another State, and the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs, such citizen of another State, whether he be plaintiff or defendant, if he will *make affidavit, stating that he has reason to and does believe that from prejudice or local influence, he will not be able to obtain justice in such State Court, may, at any time before the final hearing or trial of the suit, file a petition in such State Court for the removal of the suit into the next Circuit Court of the United States, etc., and upon compliance with the terms of the Act, it is made the duty of the State Court not to proceed any further in said suit. These two Acts of Congress are remedial statutes, and should receive a liberal construction.

The argument that the motion to remove only applied to the appeal from the Court of Ordinary, is merely technical, in view of the facts in the record. When the cross-bill was filed, it embraced all the matters in controversy between the parties, and the Court of Equity had acquired jurisdiction of them for the purpose of adjudicating the same, and the whole matter was before the Court below, the cross-bill and all the other proceedings, involving the rights of Thalia Peters, the non-resident defendant, who was enjoined, as well as the rights of Anna Peters, who claimed her year's support. and the motion to remove was resisted, because the cross-bill had been filed, and all the matters in controversy between the parties had been merged in it, and that they had

been enjoined by the Court from prosecuting the same until the final judgment of the Court should be had in regard to them, including Thalia Peters' claim under the New York decree, as well as Anna Peters' claim to a year's support out of the intestate property pending on the appeal in the Superior Court. The rights of the respective parties to the insolvent intestate's estate, were involved in that appeal which were embraced in the cross-bill, and were to be adjudicated on the final hearing thereof, and could not be otherwise adjudicated, except in the Court of Equity which had taken jurisdiction of the several matters in controversy between the parties, and the motion to remove that part of the case, as the same then stood before the Court, was for all practical purposes, as contemplated by the Acts of Congress, a motion to remove the whole case. Thalia Peters, the non-resident defendant, was *enjoined from prosecuting her claim in the other Courts of the State, and her rights to the intestate's property were to be finally adjudicated on the final hearing of the cross-bill. The motion to remove the case, was a motion to remove it as it then stood before the Court. And the legal effect of allowing the motion was to transfer the whole case to the Circuit Court, the cross-bill made it one entire case, so far, at least, as the rights of the non-resident defendant, Thalia Peters, was concerned, in the intestate's property. The contest between the parties in the Court of Ordinary, was whether the claim of Thalia Peters should be allowed, or the claim of Anna Peters should be allowed; the allowance of either claim would exhaust the intestate's estate as against the other claimant, the estate being insolvent, and the decision of the Court on the cross-bill filed by the administrator for direction, will be a final adjudication as to the claim of Thalia Peters to be paid out of the property of the intestate; both claims cannot be paid. The administrator, in legal contemplation, represents both parties, so far as their respective interests in his intestate's estate are concerned, and the final decree on the hearing of the cross-bill, will be a final adjudication of the claims of the respective parties to be paid out of the intestate's property. In my judgment, Thalia Peters, the non-resident defendant in the cross-bill, who had been restrained by injunction, had a clear and indisputable right, under the Acts of Congress of 1866 and 1867, to have had her petition for the removal of the case granted, and that there was no error in the judgment of the Court below in granting the order for the removal of the case to the Circuit Court of the United States.