## LYMAN v. THE STATE.

The homicide in question having been committed by striking a single blow with an empty glass pitcher which happened to be on a table near the accused, and which was suddenly taken up by him in the progress of an altercation with the deceased and the blow with it instantly stricken, there being various attendant circumstances from which the jury might infer that the blow was stricken without any intention to kill, but for the purpose of checking an advance by the deceased or hindering him from using violence, both parties being angry and apparently about to fight, and the blow having resulted in death some days afterwards, unexpectedly to the physician who examined the wound shortly after its infliction, the question whether the homicide was voluntary or involuntary should have been submitted to the jury, more especially as there was no evidence, other than the exhibition of the pitcher itself before the jury, as to whether it was or was not an instrument likely to produce death or serious bodily harm in the way and with the degree of force it was used. In charging the jury the court should not have assumed as matter of law that the killing was wilful or intentional, and should not have limited their finding by positive instruction to a verdict of murder, voluntary manslaughter, or not guilty.　　　　*Judgment reversed.*

May 18, 1892.

Criminal law. Manslaughter. Charge of court. Before Judge MILLER. Bibb superior court. November adjourned term, 1891.

Lyman was indicted for murder. The evidence showed that he and the deceased were employed on the same railroad coach, and were on good terms. On a certain night they drank whisky and beer with two women at the car, until about midnight, when the defendant and one of the women went to a house in the neighborhood; the deceased and the other woman went to the same place two or three hours afterwards, and the deceased waked the defendant and charged him with having carried away a shoe belonging to the woman who accompanied the deceased; this was denied, and a quarrel ensued, in the course of which the defendant arose from the bed and put on his pantaloons; both parties advanced

89-22

toward each other, and, according to some testimony, the deceased put his hand behind him towards his pocket in which a pistol was afterwards found; the defendant seized a glass pitcher from a table in the center of the room, and struck the deceased on the head with it, knocking him down, and he died two days afterwards.

The defendant was found guilty of voluntary manslaughter, with a recommendation to mercy. His motion for a new trial was overruled, and he excepted. The grounds of the motion material here are: After the jury had retired and had considered the case for about an hour and a half, they returned into court, and the foreman inquired whether it would be lawful for them to find the defendant "guilty of involuntary manslaughter in the commission of an unlawful act," and what the penalty would be in that case. The court replied: " No, not in this case. I have not submitted any question of involuntary manslaughter to the jury. In the opinion of the court the case falls under one of these heads: murder, voluntary manslaughter, or not guilty; for this reason I have not instructed the jury about involuntary manslaughter at all." It is alleged that the court erred in not then and there instructing the jury upon the law of involuntary manslaughter, and that the statement thus made by the court was an expression of opinion upon the evidence and was a direction to the jury to return a verdict of murder or voluntary manslaughter. It is further alleged that the court erred in refusing to give to the jury the law of involuntary manslaughter, either in the original charge or when they returned into court and asked whether they could find a verdict of involuntary manslaughter in the commission of an unlawful act; in confining them to the consideration of three propositions: murder, voluntary manslaughter, and not guilty; in failing to submit to them the question whether the defendant was guilty of invol-

untary manslaughter, although the evidence was such as required the submission of that question, and the defendant's counsel contended that it might be a case of involuntary manslaughter; and in refusing to charge sections 4327, 4328, 4329 of the code, although requested in writing so to do.

The refusal to charge as follows is assigned as error: "If the jury believe from the evidence that the defendant was not entirely justified under the law and evidence in the killing of the deceased, if he did kill him, and that he did not intend to kill the deceased, but did so in the commission of an unlawful act, or of a lawful act which probably might produce such consequences in unlawful manner, then the jury would not be authorized to find the defendant guilty of murder, or of voluntary manslaughter, but they might find him guilty of involuntary manslaughter, either in the commission of a lawful act, as the evidence authorizes them to believe that the act was unlawful or lawful."

The court charged: "It becomes necessary in this case that I should instruct you upon the law of murder, voluntary manslaughter and justifiable homicide," and then proceeded to define to the jury voluntary manslaughter and justifiable homicide, and to charge them upon these subjects, but wholly neglected to charge upon the subject of involuntary manslaughter; and this is assigned as error. The court also charged: "If you do not think it is a case of murder, then see whether in your opinion this man is guilty of voluntary manslaughter; . . you ought also to inquire, of course, whether it is a case of justifiable homicide"; but did not define the law of involuntary manslaughter and instruct the jury that they could find a verdict of involuntary manslaughter, and this is assigned as error.

DESSAU & BARTLETT and T. M. HUNT, for plaintiff in error, cited Code, §3248; *Ga. Rep.* 5—441; 10—110;

15—223; 17—93; 22—76; 29—594; 31—424; 63—693; 75—181; 76—474; 80—272; 88—297; 89—140; 2 Thomp. Tr. §2214; 1 Whar. Cr. L. §§381, 474-8; 1 Russ. Cr. 514, 582; 7 C. & P. 274, 32 E. C. L. R. 509; 1 East, P. C. 236; 2 Ld. Raym. 1498; 1 *Id.* 43; 1 Hale, 455; 1 Leach, 378; 12 Rep. 87.

W. H. Felton, Jr., solicitor-general, *contra*, cited *Ga. Rep.* 5—441; 10—102; 28—215; 17—200; 18—229; 22—83; 55—697; 58—212; 76—697; 3 Gr. Ev. §128.