## CHANNELL *v.* THE STATE.

1. The removal of an officer from the county for which he was elected to another county in this State does not vacate the office until the fact has been judicially ascertained. A challenge by a defendant in a criminal case, therefore, to the array of jurors, because of such non-residence of a jury commissioner who participated in drawing the jury list was demurrable, it not appearing that the fact of such non-residence had been judicially determined.

2. One who deliberately kills another, not for the purpose of preventing any impending wrong, but in revenge for a past offense, however heinous such an offense may be, is guilty of murder. The undisputed evidence in this case showing such to be the motive of the killing, the law of manslaughter was not involved.

Argued October 6,—Decided October 28, 1899.

Indictment for murder.　Before Judge Smith.　Montgomery superior court.　April term, 1899.

*H. B. Simmons, Allen Fort,* and *C. D. Loud,* for plaintiff in error.　*J. M. Terrell, attorney-general, J. F. DeLacy, solicitor-general,* and *E. D. Graham,* contra.

Lewis, J.　W. T. Channell was placed on trial in Montgomery superior court, under an indictment charging him with the murder of W. H. Thompson.　Before proceeding to trial on the merits of the case, the accused challenged the array of jurors, upon the ground that the list of jurors was illegally made up, because one of the jury commissioners who participated in preparing the list was not a jury commissioner at the time, as he had moved from the county of Montgomery to the county of Laurens.　The State's counsel demurred to this challenge, and to the judgment of the court sustaining the demurrer the accused filed exceptions pendente lite. The accused pleaded not guilty.　The record discloses substantially the following facts developed in the progress of the trial: Some time during the year previous to the killing the accused brought suit for divorce against his wife, charging her with adultery with Thompson, the deceased.　Not having sufficient evidence to sustain this charge, the suit was abandoned.　From the time it was instituted up to the time of the killing in March, 1899, the accused and his wife lived apart. She finally left the town where they were living and moved to De Soto, where she was when the homicide occurred.　After the dismissal of the divorce suit, and a short while before the homicide, the accused made repeated threats against the deceased, stating to one witness that as soon as he arranged his business he would kill Thompson, assigning as the reason that he had come between him and his wife.　Arming himself with a shotgun, he came within a few feet of where the deceased was sitting engaged in conversation with three other persons in a quiet manner, and hailed Thompson with the remark, "Come across."　The deceased asked an explanation of what he meant, and the accused replied, "You have come between me and my wife."　As Thompson was rising unarmed, with-

out any demonstration of making any attack or doing any harm to the accused, he was shot down while in a half bent position, the accused having the gun pointed toward him before he began to rise. The accused was begged by one of the witnesses present not to shoot again, but fired his gun again after Thompson had fallen. The accused then endeavored to make his escape by going off, but was followed and arrested. Such was, in substance, the evidence introduced by the State. The defendant introduced no testimony, but made a statement in which he admitted the facts of the killing, and said that when he fired the accused had his hand in his pocket or behind him; and further assigned as a reason for the killing a letter that he had received in which the writer stated that he could testify to the adultery between the wife of the accused and Thompson. The jury returned a verdict of guilty. A motion for a new trial was made and overruled, and the bill of exceptions alleges error on the judgment overruling the motion, and also on the judgment sustaining the demurrer to the challenge made to the array of jurors.

1. Section 229 of the Political Code prescribes how offices in this State may be vacated, and one of the methods (see subdivision 5) for vacation is, "By the incumbent ceasing to be a resident of the State, or of the county, circuit, or district for which he was elected. In the first case the office shall be vacated immediately; in the latter cases, from the time the fact is judicially ascertained." It is manifest from this provision that when an incumbent of an office has moved from the county for which he was elected to another county in this State, the office is not thereby immediately vacated, and does not become so until the fact has been judicially ascertained. The challenge to the array of jurors made in this case was clearly insufficient, in that it recited no facts showing that the office of the jury commissioner had been vacated; and hence there was no error in sustaining the demurrer to this challenge.

2. Besides the general grounds in the motion for a new trial, that the verdict was contrary to law and evidence, it is further alleged that the court erred in failing to give in charge to the jury the law of voluntary and involuntary manslaughter.

There is not a fact or circumstance developed by the sworn testimony as it appears from this record which would have authorized the court to instruct the jury upon either one of these grades of homicide.    We do not think that even the statement of the accused could, by any fair construction put upon it, reduce the killing below murder.    But even if it were susceptible of such a construction, there was no request to charge the law of manslaughter, and an omission to instruct the jury upon any theory of the defense sustained only by the statement of the accused, without a request, is not reversible error, as has been repeatedly held by this court.    This killing was the result of express malice.    It was from hatred, not fear; for revenge, and not for protection; to redress a past alleged wrong, and not to defend against a threatened or impending injury.    There was not a single fact in the testimony which in the remotest degree tended to show any legal cause whatever for the excitement of that sudden heat of passion that, under the law, would reduce the killing from murder to manslaughter. There was not even any evidence in this case that the deceased was ever guilty of illicit intimacy with the wife of the accused. But even if evidence to this effect had been of the most positive character, the killing was not for the purpose of preventing, but avenging a past wrong.    If there is any principle of criminal law well established by repeated rulings of this court, it is, that the deliberate killing of another, not for the purpose of preventing any impending wrong, but solely for the purpose of avenging a past offense of debauching the slayer's wife, involves no element of manslaughter whatever, but is a case of absolute murder.    *Hill* v. *State*, 64 *Ga.* 454; *Mays* v. *State*, 88 *Ga.* 402; *Farmer* v. *State*, 91 *Ga.* 720.

*Judgment affirmed.    All the Justices concurring.*