### 9018.  COX *v.* THE STATE.

1. There was no abuse of discretion by the trial judge in refusing to give counsel for defendant a longer time than two hours for argument of the case.

2. The exception to the charge of the court, that it was argumentative of the State's case, is not well taken. The charge fully and fairly presented the contentions of the defendant.

3. There is no merit in the exception to the charge of the court set out in ground 6 of the motion for a new trial. The court fully instructed the jury upon the law of reasonable fears as applied to the defense set up by the accused.

4. Under the evidence in this case the court did not err in failing to charge the jury upon the subject of involuntary manslaughter. Under no theory was the killing unintentional or involuntary. Neither was the charge erroneous for any of the other reasons assigned in ground 8 of the motion for a new trial.

5. The excerpt from the charge of the court set out in ground 9 of the motion for a new trial is not subject to the criticism that it "intermingled the law of justifiable homicide and mutual combat." This excerpt, in connection with the part of the charge immediately following it, correctly stated the law as found in sections 70 and 71 of the Penal Code (1910), and applied it to the defendant's theory of justifiable homicide.

6. The evidence authorized the charge on voluntary manslaughter, and the instruction set out in ground 5 of the motion for a new trial is not subject to the exceptions taken.

7. Grounds 10 and 11 of the motion for a new trial, not having been argued by counsel for plaintiff in error, will be treated as abandoned.

DECIDED NOVEMBER 2.—REHEARING DENIED NOVEMBER 17, 1917.

Indictment for murder; conviction of manslaughter; from Berrien superior court—Judge Thomas. June 9, 1917.

*J. P. Knight, Hendricks, Mills & Hendricks, E. E. Cox,* for plaintiff in error.

*Fondren Mitchell, solicitor-general, H. J. Quincey, J. D. Lovett, J. C. Smith,* contra.

HARWELL, J.  Cox was indicted for the murder of I. T. Sealy, the jury returned a verdict of voluntary manslaughter, the defend-

ant's motion for a new trial was-overruled, and he excepted. The exceptions taken to the charge of the court, and the other grounds of the motion, and the rulings thereon as shown by the headnotes, need no elaboration, except, perhaps, the grounds referred to in the 1st, 4th, and 6th headnotes of this decision.

The evidence showed that the killing occurred on December 14, 1916; that the deceased, I. T. Sealy, was a tenant of the defendant, had become dissatisfied, and had made arrangements to move to a neighboring place; that on the morning of the homicide he and his wife and his young son, J. B. Sealy, had gone to the lot at the place where he lived, for the purpose of moving some fertilizer therefrom; that the defendant Cox, and George Sealy, a brother of the deceased, were present just outside the lot, at a pile of lumber; that the defendant, observing that the deceased and his family were about to move the fertilizer, went into the lot and objected to their moving it. From this point there is a decided conflict in the evidence offered by the State and that offered by the defendant and the defendant's statement. The sole eyewitnesses to the killing were J. B. Sealy, the young son of the deceased, Mrs. I. T. Sealy, wife of the deceased, and his brother, George Sealy. The two first-named witnesses testified in behalf of the State, and the last in behalf of the defendant. The testimony offered by the State made out a case of murder. It showed, briefly, the following facts: The defendant came into the lot behind Sealy and his wife and son, and asked what they were going to do; the wife replied that they were going to move the fertilizer. The defendant said that if they did, he would have them arrested. The wife replied: "Have us arrested; we don't care." Cox then said he would, and, according to the State's witnesses, turned around, and they thought that he was gone. The next thing they knew, the defendant grabbed up a hoe, ran up behind the deceased, who was at the time attempting to lift the wagon around, and struck at his head, but missed him; the defendant then struck him on the head with the hoe, inflicting the wound from which he died. Neither one of the Sealys was doing anything to him at the time he struck the deceased. The wife was engaged in rolling away a block of wood and was not looking at the time the blow was struck. The defendant's statement at the trial tended to make out a case of justifiable homicide, but also we think warranted the inference

that he struck the fatal blow in the heat of passion, after he had disarmed Mrs. Sealy and at a time when no necessity existed to strike. He stated that when he asked them not to move the fertilizer, the wife and the husband both said they would move it or die, and that as he turned, Mrs. Sealy struck him with the hoe; that both of them then attacked him with hoes, and, believing that it was necessary to do so in order to save his own life, he grabbed the hoe from Mrs. Sealy's hand and struck the deceased with it and killed him. The defendant, in his statement, refers to Mrs. Sealy's striking him, but, except by the use of the expression, "They had done struck me," does not indicate very clearly that the deceased ever struck him at all. He said: "I spoke to Mr. Sealy and asked him not to move it, but he said 'I'll move it or die;' I turned; as I did Mrs. Sealy struck me and I threw up this arm. There is a scar right there. She was striking me, and I grabbed the hoe, but they had done struck me on the head, and as I got the hoe Mrs. Sealy struck me there the last lick (indicating). With the blood streaming down my face I couldn't see whether I hit anybody or not, when I made my lick." The testimony of George Sealy corroborated to some extent the defendant's statement, but from it we think the inference could be drawn of a mutual intent to fight. His testimony as to the fight was substantially as follows: Mr. Cox told the deceased not to move that fertilizer, that if he did he would have them arrested. Then my brother told him he would move it or die. My brother had a hoe in his hand; my brother's wife had a hoe in her hand. If anything further was said I don't remember it. My brother and his wife then struck him with hoes on the head and knocked his hat off on the ground. Mr. Henry Cox got hold of a hoe in that fight and drawed it back; I didn't see anything else—she come in between me and him at that time. I didn't see the lick start downwards; I didn't see Mr. Cox hit my brother; I saw him when he hit him; I saw when he hit the lick, and then she come in between me and him. They were fighting. He walked in there and said, 'Mr. Sealy, if you move that fertilizer, I'll have you arrested.' Mrs. Sealy said, 'I'll move it or die.' That is all that was said. They went to fighting then."

The record is voluminous, but, taking the evidence as a whole, we think that it justified the conclusion that the passions of these

parties were aroused by the dispute in reference to moving the fertilizer, and that then a general fight ensued between the defendant, on the one hand, the deceased and his wife on the other. Where there is some evidence of a mutual intention to fight, it is not error for the court to give in charge to the jury the law of voluntary manslaughter. Even though the jury might believe that the deceased and his wife had made an assault on the defendant with hoes, and had attempted his life, still they were authorized to find, from the fact that the defendant had taken the hoe away from the wife of the deceased, and that the left arm of the deceased was broken and useless at the time, that the defendant did not kill to prevent a felony then being attempted on his person, but the jury might have found that he killed after the personal danger had ended, and that the mortal wound was inflicted in the heat of passion engendered by the previous assault. *Evans* v. *State,* 33 *Ga.* 4; *Pierce* v. *State,* 132 *Ga.* 27, 30 (63 S. E. 792), and cases cited. In addition to this, the testimony of George Sealy, as above shown, clearly indicates that the defendant was engaged in a fight with the deceased and his wife at the time of the homicide, the anger of the participants having been aroused over the dispute concerning the removal of the fertilizer. For these reasons we think that the trial judge correctly instructed the jury on the law of voluntary manslaughter.

The able counsel for the plaintiff in error insist in their brief that the judge should have charged the jury on involuntary manslaughter, citing *Lyman* v. *State,* 89 *Ga.* 337 (15 S. E. 467), where a glass pitcher was the instrument used; *Warnack* v. *State,* 3 *Ga. App.* 590 (60 S. E. 288), where a brake-stick was the instrument used; *Farmer* v. *State,* 112 *Ga.* 80 (37 S. E. 120), where a beer bottle was thrown, and *Joiner* v. *State,* 129 *Ga.* 295 (58 S. E. 859), where the decision does not show the character of the instrument used. Upon examination of these cases and others similar thereto (as *Dorsey* v. *State,* 126 *Ga.* 633, 55 S. E. 479), it will be seen that there the jury were authorized to find either that the weapon used was not necessarily a deadly weapon, or that it was not used in a manner likely to produce death. This was not such a case. The weapon with which the deadly blow was given in the instant case was a Scoville hoe, with a handle in it. This is the ordinary farm hoe with an eye in it, through which

the handle passes. The testimony, even of one of the defendant's witnesses, shows it is a deadly weapon. The testimony is hardly needed for this purpose, however. It is common knowledge, among those who know what such a hoe is, that it is a deadly weapon, when used as in this case. The testimony further shows that the deceased was a small man and that at the time of the tragedy he probably did not have the use of his left arm. It had been broken at the elbow some time before this, and the testimony indicated that he had very little use of it at the time he was killed. The hoe was wielded by the defendant with such force as to break the handle and to crush the skull of the deceased. Can it be said, under these circumstances, that the killing was involuntary or unintentional? We think not, and hold that the court did not commit any error in failing to charge the law of involuntary manslaughter.

One of the grounds of the motion for a new trial complains that the court committed error in refusing to give counsel for the defendant three hours for argument, and in limiting them to two hours. Rule 5 of the superior courts (Civil Code of 1910, § 6264) limits counsel in capital felonies to two hours on a side, and further provides that the court may upon proper application, made as provided therein, grant such extension of time as may seem reasonable and proper. The grant of such extension, as will be seen from this rule, is in the discretion of the trial judge, and his discretion will not be controlled unless it is manifestly abused. In the instant case there is nothing to indicate any abuse of discretion by the trial judge in refusing to grant the extension of time requested.

The trial judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*