### AUSTIN, *alias* ALSTON, *v.* THE STATE.

HINES, J. 1. The illness or absence, from providential cause, of counsel where there is but one, or of the leading counsel where there are more than one, shall be a sufficient ground for a continuance (Penal Code, § 990) ; but a continuance will not be granted for the absence of counsel attending cases pending in another court, except in the Court of Appeals or the Supreme Court. *Peters* v. *Peters,* 41 *Ga.* 242; *Cotton States Life Insurance Co.* v. *Edwards,* 74 *Ga.* 220; *Hatcher* v. *Bowen,* Id. 840; *Carroll* v. *Groover,* 27 *Ga. App.* 747 (110 S. E. 30) ; *Hamrick* v. *Stewart,* 29 *Ga. App.* 220 (114 S. E. 723).

(*a*) A motion to continue for absence of counsel must affirmatively disclose that the motion is not made for delay only, and that the movant expects to secure his services at the next term. *Wright* v. *State,* 18 *Ga.* 383 (2) ; *Burnett* v. *State,* 87 *Ga.* 622 (13 S. E. 552) ; *Wall* v. *State,* 126 *Ga.* 86 (54 S. E. 815) ; *Curry* v. *State,* 17 *Ga. App.* 377 (87 S. E. 685).

2. Under the evidence voluntary manslaughter was not involved, and the court did not err in failing to charge the law upon that subject.

(*a*) "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." Penal Code, § 65.

(*b*) In the absence of a written request, the trial judge is not bound to give in charge to the jury sections 64 and 65 of the Penal Code, the former defining manslaughter, and the latter defining involuntary manslaughter, where the theory of manslaughter is based solely upon the statement of the defendant. *Evans* v. *State,* 151 *Ga.* 434 (107 S. E. 38).

3. The verdict is supported by the evidence.

*Judgment affirmed. All the Justices concur, except Gilbert, J., absent for providential cause, and Russell, C. J., dissenting.*

No. 4874. JUNE 19, 1925.

Murder. Before Judge Reed. Brantley superior court. April 4, 1925.

Jim Austin, alias Alston, was indicted for the murder of Domas McGill. The evidence for the State made this case: The deceased and the defendant were out riding, with other negroes, in an automobile. The automobile belonged to the defendant. All of the party had moonshine liquor. The deceased had given a half pint of this liquor to the defendant to take to the brother of the former. Afterward the deceased asked the defendant for this liquor. The defendant stated that he did not know what he had done with it, and that they might have lost it when they had run into a tree top during this ride. The deceased then said to the defendant that he wanted his whisky, and that if he did not get it he would kill somebody or somebody would kill him; he then held up his hand

and said to the defendant, applying to him a very opprobrious epithet, "If you don't get me that whisky I will kill you." This occurred in front of the home of one Henderson, where the party had stopped in order to get a light to make some repairs on the automobile, which was not working well. Henderson said to the party, that they had started a fuss and would have to leave there, as he did not want any fuss. The defendant cranked up the car and said, "Let's go." The party then left. The gasoline gave out, and the defendant went after some. He did not have a gun when he left the automobile. After waiting awhile the other members of the party left the vehicle. When they had gone some distance the deceased said to the wife of defendant, "That man [referring to the defendant] has not come back with my whisky," and "I am going to have my whisky when I get to the quarters." The wife replied, "When you get to the quarters you are going to get a whole lot of hell." At that time the defendant came from behind a sapling. He had a gun. He said to the deceased, "I will get you a half pint of liquor, going along here squabbling with my wife—I will kill you," applying to the deceased an opprobrious epithet. The defendant threw up his gun, the deceased jumped to run, and the defendant shot him as he wheeled to run, and he fell dead in a ditch beside the road.

The evidence for the defendant made this case: The occupants of the automobile stopped at the home of one Henderson. The defendant got out and asked Henderson for a light to work on his car. Henderson brought out a lamp, and defendant worked on the car. Henderson was asked about a fire. He built a fire. He said to the defendant, "You are not cold, Jim?" The defendant said, "Yes." Henderson said, "Looks like you all have enough liquor in you to keep you warm," and asked for some. The de-fendant said that he did not have any. The deceased said he had some. He looked for it and could not find it and he said to the defendant, "Jim, have you got my whisky?" The defendant said, "I have not got it; it might be in the car." The deceased looked in the car and could not find it, and said to the defendant, "Jim Alston, if you don't get my whisky I am going to kill you before daylight." The deceased cursed the defendant. Henderson told the defendant to crank up the car and take that negro away from there. The deceased again said to the defendant, "If you don't

give me my whisky I am going to kill you before daylight," applying a very opprobrious epithet to the defendant. The defendant replied, "I have not got the whisky, but I will pay you for it." The defendant offered every way he could to satisfy the deceased, and told him that he would pay him for the whisky, and the deceased said, "I don't want the pay. I want the whisky." The defendant told the deceased that if he would hush he would get some gas and oil and go back and get some whisky for him. Henderson ordered them to get in the car and leave the place.

The defendant, in his statement, after recounting what passed at the home of Henderson, gave this account of the killing: "I didn't know whether I had enough gas to make it in or not. And I went on down the road just a small piece, and I seen a car coming, and the road wasn't wide there;  .  .  there's bushes right up to the ruts, and by walking on the outside, fearing I might stumble on something, and I couldn't see facing the light, and I pulled my hat down and walked close to the road. I knowed all the white folks knowed me, and they would say, 'Hello, Jim,' and I could stop them and get them to quiet down that fellow to keep from getting into trouble or keep him from killing me, but they didn't hello me. Well, I went on into the house, and I stopped about ten minutes and says, 'Well, I dont know what to do.' I says, 'I left my car back yonder right in the middle of the road and my wife right in the middle of the road, and I reckon I had better go back down there and get my car out of the road.' Well, I had my gun then, and I said, 'Now the railroad is the nearest way, and I am going the dirt road and see if I can dodge them.' I went the railroad and figured they were coming the railroad too; and when I started back a piece to the quarters I went with them and heard cussing. Then Sam Bivins says, 'Here's Jim now, coming back after the car,' and the [deceased] says, 'Where is  .  .?' " using a very opprobrious epithet, "and dashed for me, and by me getting like that [illustrating]. Sam run that way [indicating], and he was behind coming in after me, and I dashed on a little old ditch side of the road, and when I saw I was falling I just could see his head above the trees; it was dark, and he said, 'I am going to kill you,' " applying to the defendant an opprobrious epithet, "and I just shot over like that, and I said, 'I will try to kill you to save my own life,'  .  .  and that is how it was done.

And I had to shoot him. He was making it for me, cussing for all sorts of cuss, and I shot him to save myself."

The jury found the defendant guilty, with recommendation, and he was sentenced to serve in the penitentiary for life. He made a motion for new trial on the formal grounds, and upon the special grounds, (a) that the court refused to continue his case because of the absence of his leading counsel in attendance upon court in another circuit; and (b) that the court erred in omitting to charge the jury sections 64 and 65 of the Penal Code. There was no written request for instructions embracing these sections. The court overruled the motion, and the defendant excepted.

*I. J. Bussell,* for plaintiff in error.

*George M. Napier, attorney-general, A. B. Spence, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.