DANIELS, *alias* DANIELLY, *v.* THE STATE.

HINES, J. Emma Daniels, alias Emma Danielly, was indicted for the murder of Annie Pearson. She was tried and convicted, with a recommendation. She moved for a new trial upon the formal grounds, and by an amendment to her motion added seven special grounds. The trial judge overruled the motion, and to this judgment she excepted.

1. The trial judge charged the jury as follows: "A reasonable doubt is a doubt that is reasonable, growing out of a consideration of the evidence. The jury tries the case by the evidence. If the evidence fails to produce in the minds of the jury reasonable and moral certainty, or fails to remove all reasonable doubt of guilt of the defendant, then the evidence is insufficient to authorize a verdict of guilty." The defendant excepts and assigns error on this charge, upon the ground that it instructed the jury that a reasonable doubt must grow out of the evidence, thus excluding from their consideration her statement to them in determining whether there was a reasonable doubt of her guilt. *Held,* that the judge can properly frame his general charge to the jury upon the evidence alone, appropriately instructing them, however, at some stage thereof, with respect to the defendant's statement. *Tolbirt* v. *State,* 124 *Ga.* 767 (2) (53 S. E. 327); *Fitzgerald* v. *State,* 136 *Ga.* 163 (4) (71 S. E. 128); *Rouse* v. *State,* 136 *Ga.* 356 (5) (71 S. E. 667). In this case the court fully instructed the jury upon the defendant's statement.

2. The court charged the jury as follows: "Now in this case, if this defendant made up her mind with any degree of deliberation to kill Annie Pearson, and did kill her, using for that purpose a weapon likely to produce death, when there was no considerable provocation being then given to her by Annie Pearson, or if she made up her mind to kill Annie Pearson on account of some past injury or wrong that Annie Pearson had committed to the defendant, or the defendant may have thought she committed upon her, any wrong she had done her in the past, and killed her in this manner for the purpose of avenging a wrong, a real or fancied wrong, Annie Pearson had done her, then she is guilty

of murder." The defendant assigns error upon the grounds: (*a*) that the court in this charge expressed an opinion that she killed the deceased and used for that purpose a weapon likely to produce death; (*b*) because the court charged the jury that if the defendant killed the deceased on account of some past injury or wrong she would be guilty of murder, and failed to instruct the jury that if her passion had been aroused by some injury or wrong, and a sufficient time had not elapsed for the voice of reason and humanity to be heard, then, if the jury thought she acted under the uncontrollable passion thus raised, she would be guilty of voluntary manslaughter; (*c*) because the court restricted the jury to a consideration only of provocation given at the time of the killing; and (*d*) because the court instructed the jury as a matter of law that if the defendant killed the deceased because of some past injury or wrong she would be guilty of murder, thus withdrawing from the jury the right to reduce the killing to voluntary manslaughter should they think the defendant was still acting in the heat of passion and sufficient time had not elapsed for the voice of reason and humanity to be heard. *Held:*

(*a*) The contention that this instruction expressed an opinion by the court to the jury that the defendant killed the deceased, and used for that purpose a weapon likely to produce death, is without merit. This instruction left the jury to determine whether the defendant killed the deceased, and whether in doing so she used a weapon likely to produce death. Such hypothetical statement of the facts to be determined by the jury did not amount to an expression of opinion upon the facts by the court. *Kitchens* v. *State*, 41 *Ga.* 217. In *Davis* v. *State*, 91 *Ga.* 167 (17 S. E. 292), the facts were not put hypothetically to the jury.

(*b*) To kill with any degree of deliberation, when no considerable provocation is given to the slayer by the deceased at the time, not for the purpose of preventing any impending wrong, but for the purpose of avenging a past wrong, is murder. *Hill* v. *State*, 64 *Ga.* 453 (2); *Mays* v. *State*, 88 *Ga.* 399 (14 S. E. 560); *Wilkerson* v. *State*, 91 *Ga.* 729 (17 S. E. 990, 44 Am. St. R. 63); *Channell* v. *State*, 109 *Ga.* 150 (2) (34 S. E. 353); *Gossett* v. *State*, 123 *Ga.* 431 (51 S. E. 394); *Mize* v. *State*, 135 *Ga.* 291 (69 S. E. 173).

(*c*) The court did not err in restricting the provocation to the time of the slaying, as the court in its instruction was then dealing with provocation which would justify a homicide, and not such provocation as would reduce the homicide from murder to manslaughter.

(*d*) In this instruction the court did not withdraw from the jury the right to reduce the homicide from murder to manslaughter, but was enumerating to the jury certain circumstances under which the homicide would be murder, the judge afterwards submitting to the jury the question whether the homicide amounted to manslaughter.

3. The court charged the jury as follows: "But I charge you that an essential element of justifiable homicide, that is if the killing is done for the purpose of preventing an impending wrong, a man can not kill another in self-defense unless there is at the time a necessity to kill, or an apparent necessity to kill in order for the killer to save his own life or to protect himself from a felonious assault being made or about to be made upon him. A man can not be justified and guilty of no crime

unless there is a necessity to kill, or the facts and circumstances are such as to make him believe as a reasonable man, authorize him to believe, that such a necessity existed at the time. No man is ever justified in killing another for a past wrong. It must appear at the time there was a necessity to kill. There must be a real necessity, or there must be such a danger or the appearance of such danger as to justify him as a reasonable man to believe that a real danger existed either of being killed or suffering a felonious assault by the man who he undertakes to kill." The defendant excepts to this charge upon the grounds: (a) that it placed upon her the burden of showing an absolute necessity to kill; (b) that it was confusing, and was calculated to impress upon the jury that the burden was upon her to prove that at the time of the homicide there was an absolute necessity to kill, and eliminated the doctrine of reasonable fears; and (c) that it placed upon the defendant the burden of' justifying her fears. *Held:*

(a) The first exception to this charge is without merit. The court expressly instructed the jury that an apparent necessity to kill would be sufficient, and did not restrict them to a real necessity.

(b) This instruction did not put upon the defendant the burden of showing a real necessity to kill, and did not exclude from the jury the doctrine of reasonable fears. In *Dotson* v. *State*, 129 *Ga.* 727 (59 S. E. 774), the court, after first giving the theory of reasonable fears, practically limited this defense to actual danger, and to the question whether the deceased was in fact undertaking to inflict injury upon the accused or take his life. In *McCray* v. *State*, 134 *Ga.* 416 (68 S. E. 62, 20 Ann. Cas. 101), the court improperly qualified the doctrine of reasonable fears as applied to the defense of justifiable homicide, by instructing the jury that such fear must rest upon danger then impending, thus destroying the effect of instructions upon the subject of reasonable **fears.**

(c) The use of the word "justify," in this instruction, instead of the word "excite," is not exact. *Morgan* v. *State*, 152 *Ga.* 537 (110 S. E. 286). In *Long* v. *State*, 127 *Ga.* 350 (56 S. E. 444), this court approved a charge as follows: "If, at the time the deadly blow was inflicted, the person who inflicts has well-founded reasons to believe himself in imminent peril, without having, by his fault, produced the exigency, then such killing will not be murder," against the objection that it stated the rule too strongly against the right of a person to kill as a result of reasonable fears. The inapt use of the word "justify," in this instruction, would not alone require the grant of a new trial in this case.

4. The court charged the jury as follows: "There is another grade of homicide that is not so serious a grade as murder, known as voluntary manslaughter, where one intentionally kills another, not as a result of a deliberate intention to kill, but as the result of some considerable provocation given at the time, a provocation that has the effect of arousing a degree of passion in a man's mind that is supposed to be irresistible, as where one man commits a serious personal injury on another, and, in the opinion of the jury trying the case, justifies the excitement of passion supposed to be irresistible." The defendant excepts to this charge, on the ground that it limited to the time of the **killing** provocation that might reduce the killing from murder to man-

slaughter. The court charged the jury as follows: "I charge you this, that the law does not require the other equivalent circumstances to reduce the killing from murder to manslaughter to be in the nature of an assault or an attempt to commit a serious personal injury by the deceased, but the circumstances must be, in the opinion of the jury, the equivalent of an assault or an attempt to commit a serious personal injury, such as to justify the excitement of passion and to exclude all idea of deliberation or malice, but I charge you the provocation must be a circumstance occurring at the time." The defendant assigns error on this instruction, for the reason that the court limited the provocation which would reduce the homicide from murder to manslaughter, to a circumstance occurring at the time. There was evidence which would have authorized the jury to find that the husband of the defendant was keeping the deceased as his mistress; that the defendant and the deceased had had a fight some two months before the homicide, growing out of the illicit relations between the deceased and the husband of the defendant, at which time the deceased admitted such improper relations, and boasted that they would continue; and, according to the statement of the defendant, her husband and the deceased were at the place where the husband was employed shortly before the killing, when the deceased stated to the defendant's husband that she would meet him that night; whereupon the husband gave to the deceased some money. This took place only a short distance from the place of the homicide. After the above interview between the deceased and the husband of the defendant, the deceased walked down the street and the defendant followed her. The deceased was engaged in conversation with another, when the defendant came up and stabbed her with a knife, from which wound she died. There was evidence which would authorize the jury to find that the defendant killed the deceased in a spirit of revenge, because of the illicit relations between the deceased and her husband. *Held:*

(a) The killing of one who is in the act of adultery with the slayer's wife is within Penal Code section 75, which declares that "All other instances which stand upon the same footing of reason and justice as those enumerated shall be justifiable homicide." *Richardson* v. *State*, 70 *Ga.* 825. While the jury may acquit the slayer of all crime, and should do so if they find that the killing was necessary, or apparently so, either to prevent the commission of a sexual act or the completion of it, yet, if the circumstances were not such as to impress a rational mind that it was necessary to take human life to prevent the sexual intercourse, and if the jury should find that the slayer killed the deceased under a violent and sudden impulse of passion, engendered by the circumstances, the homicide would be manslaughter. *Mays* v. *State*, 88 *Ga.* 399 (14 S. E. 560); *Patterson* v. *State*, 134 *Ga.* 264 (67 S. E. 816). Under the homely maxim that what is sauce for the goose is sauce for the gander, the above principles are applicable in a proper case where the wife is the slayer.

(b) If a husband was keeping the wife of another man, of which the wife had knowledge, if the wife and mistress of the husband, some two months prior to the killing of the mistress by the wife, had a fight growing out of the illicit relations between the husband and his mistress, at which time the mistress admitted to the wife her illicit rela-

24

tions with the husband and boasted that they would continue, and if, immediately before the homicide, the wife saw the husband and the mistress together and heard the mistress make an engagement to meet the husband about eight o'clock p. m., and, where it might be inferred that such engagement was made for the purpose of illicit intercourse with the mistress, the wife immediately followed the mistress as she left her husband and in a transport of passion and rage the wife stabbed with a knife and killed the mistress, it was a question for the jury to determine whether these circumstances were sufficient to justify the excitement of passion on the part of the wife, and to exclude all idea of deliberation or malice, either express or implied, and it would be for the jury to say whether the killing was the result of that sudden, violent impulse of passion supposed to be irresistible; and it was for the jury to say whether under the circumstances the homicide should be reduced from murder to voluntary manslaughter.

(c) It follows that the court erred in instructing the jury that the provocation which would reduce the homicide from murder to manslaughter must be given at the time of the homicide, and that the provocation which would so reduce the homicide must be a circumstance occurring at the time of the killing. The jury should have been permitted to consider all the facts and circumstances in determining whether the defendant acted under a sudden and irresistible heat of passion, or whether she acted with deliberation and malice. *Nixon* v. *State*, 14 *Ga. App.* 261 (80 S. E. 513).

5. In the motion for new trial the defendant alleges that the court erred in failing to give in charge to the jury the law of involuntary manslaughter in the commission of an unlawful act. This contention is based upon two theories. One is that the defendant in her statement to the jury claimed that she did not mean and intend to kill the deceased. The other theory is that the mortal wound was inflicted with a knife, which was not shown to be a deadly weapon. The first theory rests entirely upon the statement of the defendant, and the court is not required to give an instruction based thereon in the absence of a timely written request. *Austin* v. *State*, 160 *Ga.* 509 (128 S. E. 791); *Lightfoot* v. *State*, 160 *Ga.* 512 (128 S. E. 743); *Jackson* v. *State*, 160 *Ga.* 565 (128 S. E. 679). As to the second theory, the knife was introduced in evidence, and it was shown that it was used in such a manner as that the ordinary consequence of the act would have produced death. The character of the wound was shown, and it was a deadly wound. In these circumstances the court did not err in failing to charge the law applicable to involuntary manslaughter in the commission of an unlawful act. This case differs from those cases in which the homicide was committed by striking the deceased with instruments which were not deadly weapons and which were suddenly taken up by the defendants in the progress of altercations with the deceased, and blows with them were instantly stricken, and where the attendant circumstances were such that the jury might infer therefrom that the blows were stricken without any intention to kill, but for the purpose of checking advances by the deceased or hindering them from using violence, both parties being angry and apparently about to fight. *Lyman* v. *State*, 89 *Ga.* 337 (15 S. E. 467); *Chapman* v. *State*, 120 *Ga.* 855 (48 S. E. 350); *Joiner*

v. *State*, 129 *Ga.* 295 (58 S. E. 859); *Anderson* v. *State*, 130 *Ga.* 364 (60 S. E. 863).

6. The court charged the jury as follows: "Where one makes up his mind with any degree of deliberation to kill another, that is a killing with deliberate malice, or express malice, which means an unlawful killing with deliberate intention." On this charge the defendant assigns error upon the ground that one may make up his mind in the heat of passion to kill another, and the killing would be no more than voluntary manslaughter. There is no merit in this exception. The instruction complained of dealt with an unlawful homicide committed with deliberation.

7. We grant a new trial in this case on account of the error in the instructions to the jury dealt with in the fourth headnote.

*Judgment reversed.* *All the Justices concur, except Atkinson, J., who dissents from the ruling in the fifth headnote.*

No. 5333.   June 19, 1926.

Murder. Before Judge Mathews. Bibb superior court. January 30, 1926.

*W. A. McClellan* and *T. A. Jacobs Jr.,* for plaintiff in error.

*George M. Napier,* attorney-general, *Charles H. Garrett,* solicitor-general, and *T. R. Gress,* assistant attorney-general, contra.