22439. SMALLWOOD v. THE STATE.

DECIDED. SEPTEMBER 1, 1932.

*H. W. Davis, E. C. Stark,* for plaintiff in error.

*Clifford Pratt, solicitor-general, Pemberton Cooley,* contra.

LUKE, J. The indictment in this case charges that Harold Smallwood committed the offense of murder by "stabbing, cutting, striking and beating the said Thurmond Kesler with a certain pocket knife, with the said accused's fist, and with other weapons to the grand jurors unknown." The jury found the defendant guilty of voluntary manslaughter, and the exception here is to the judgment overruling the motion for a new trial.

The difficulty in question occurred on the night of Oct. 19, 1931, just after a boxing match at Rambler's Inn, "about three miles from Jefferson," in Jackson county, Ga. D. L. Howard testified in part: "I first saw Harold Smallwood outside after the boxing was over, . . and Thurmond started across the road by Harold Smallwood, Hays and C. T. Mitchell, . . and Hays said: 'Give me that duck you are smoking;' and Thurmond pulled out a package of cigarettes and handed them to him, and he handed them back, and Hays said: 'I guess you know who I am.' Thurmond says: 'Yes, I know you.' And Hays said: 'You know I have been eating there with you.' (Referring to Kesler's wiener stand in Jefferson.) And Harold Smallwood walked up and says: 'I have been eating with you lots too;' and just grabbed Thurmond and struck him in the side. He had Thurmond in the collar with his left hand. He was facing Thurmond. Thurmond wasn't doing anything to Smallwood, nor saying anything to him. . . I did not see anything in Smallwood's hand when he struck Kesler in the side, . . struck him in the left side about the last rib. He slung Thurmond back with his left hand as he hit him in the side, and Thurmond came back trying to kick Smallwood. Then Smallwood hit him with his right hand in the left temple . . and knocked him back. It would have knocked him down if it hadn't been for C. T. Mitchell. It knocked him up against C. T. Mitchell; and by that time Mr. Claude Robinson and Mr. Rankin was there, and they discovered that Thurmond was cut and bleeding. . . Smallwood hit Kesler once, and it was a hard blow. . . Thurmond was a small man weighing about 120 pounds, I guess; and Smallwood looked like he weighed about 180. . . I guess Smallwood was about eight or ten inches taller than Kesler. . . No, I did not see anybody else hit or cut him. I was about five or six steps from them, I guess. . ."

Golden Hays testified in part as follows: "Harold and Kesler was standing there in front of the steps smoking a cigarette, and I told him to give me that duck, and he pulled out a package and gave me a cigarette; and Harold walked up and grabbed him with his left hand and hit him with his right and knocked him back up against C. T. Mitchell. It looked like he hit him on the head. He just come over this way and hit him a hard lick. . . Smallwood kinder knocked him back, and Thurmond ran back at him kicking him on the legs. . . Mr. Rankin run up and was trying to pull Harold back, and Thurmond said: 'You son of a bitch, you cut me.' . . No, I didn't start the fuss. Me and Thurmond didn't have a cross word. No, I did not say to Smallwood: 'These sons of bitches are trying to run over me.' I wasn't so drunk. I was drinking, and could have taken two or three more drinks. . . I did not see it all when they began fighting. . . I didn't have both knives open; I only had one open that I was whittling with. . ."

Ralph Anderson testified in part: "Kesler just walked over there where Hays and Smallwood was, and Hays hit Kesler on the back. . . Smallwood hit Kesler, and Kesler kicked Smallwood. . . I didn't hear any argument. . . The Hays boy was drunk. . . Yes, I saw blood wherever he [Kesler] walked. . . I did not see what cut him. . . No, I don't know whether Golden Hays, or who cut him. I did not see any knife. . ."

Roy Perdue testified in part: "I saw some blood on Kesler's coat. I don't know what caused the blood. I didn't see any knife, but Kesler said: 'You stabbed me' to Smallwood. . . I didn't see Kesler do anything, nor see anything in his hands. . . No, I didn't see any knife in anybody's hands. . ."

R. M. Culberson, sheriff of Jackson county, testified in part as follows: "Lit Smallwood gave me one knife with the blade broke, and said he got it off of Hays. . . I went up in jail and took this one off of him [Hays]. There was no blood on it. . . Grover Mathis turned a knife over to me that he claimed he got off of Smallwood, and it had some blood on it which has dried now. You could see it nearly all the way down the blade to the handle. . . Hays was pretty drunk. . . My recollection is that Thurmond said Hays did not hit him, but that Harold hit him, but he did not say what he hit him with. . ."

Grover Mathis testified in part as follows: "Yes, I saw Harold Smallwood. I arrested him, searched him, and carried him to jail. I found a knife on him and gave it to the sheriff, and that looks like the same knife. . . I got it out of his right hand overall pocket. . . The knife was closed up, and had some blood on it. . . If Smallwood was drinking, I could not tell it."

Claude Robinson testified in part as follows: "No, Kesler did not say anything about who cut him. He just said: 'That big cow jumped on me;' and pointed to him. . . Kesler was kicking Smallwood, and Smallwood ran into him and hit him. I did not see any knife, and don't know what started the fuss."

Some of the other witnesses saw Smallwood hit Kesler with his fist, but most of them did not see the beginning of the trouble; and none of them appeared to know anything about the cutting.

The gist of the defendant's statement to the jury was that he was trying to stop Kesler and Hays from fighting; that he did not strike Kesler, but that he only shoved him back when Kesler started to kicking him; that Hays struck Kesler on the side of the head; that he never cut Kesler; and that he was not guilty.

There was testimony to the effect that prior to his injuries Kesler was an ordinarily healthy man, but that he had been having headaches. When he was admitted to the hospital at about three o'clock on Oct. 20th, he was in a dazed condition, had a rapid pulse, and complained of a headache and a pain in his side. There was an abrasion on his forehead and a "stab wound about an inch and a half wide just below the last rib" in his left side. This wound penetrated the cavity and made a slight puncture in the kidney. He appeared to have lost considerable blood. He remained in the hospital about eleven days. At the time the doctors were exploring the wound in Kesler's side, they relieved him of a perfectly healthy appendix because "it was a good time." The appendix operation was successful and caused no trouble. The wound in the side "healed nicely" and caused no trouble. On the 28th a doctor did a spinal puncture to see if he could find any cause for the patient's headaches, and found the fluid slightly cloudy, when it should have been clear. He did not know what caused the condition of the fluid. It could have resulted from many causes. The patient was also given tetanus antitoxin, but it showed no ill effects. A doctor testified: "During the eleven days he spent in the hospital he

was given aspirin, phenacetin, pyrododom, penapah, H. M. C. (that's a morphine preparation), codine and pertutin." An examination of Kesler's brain disclosed a weakened blood vessel, or aneurism, near the base of the brain, and this artery had burst and caused blood to flow in the brain, and the doctors attributed his death to this hemorrhage. Dr. Wyman Davis testified "Well, it is possible for a lick from the fist to have effect on an aneurism on the posterial cerebral artery. . . No, I don't know what caused his death. . . If he had an aneurism, any shock or undue excitement is not good for him. . . The stab caused the operation, and the shock and all would contribute to the aneurism and make it more dangerous. . . I would not say that the stab produced death . . but in my opinion, the wound on the head produced death. The stab wound might have contributed. If you hit a man a severe blow, medical literature says it may cause an aneurism. . ."

There was testimony that Kesler's death occurred a few days after he had taken novocaine and had an infected tooth extracted.

Dr. M. B. Allen testified in part: "A blow of sufficient force would cause an aneurism. A lick with a man's fist might or might not cause it."

Dr. C. B. Lord testified in part: "I had known Kesler about five years. He was healthy so far as I know. . . My conclusion was that he died of hemorrhage which was due to a blow on the head. . . I don't think the formula given him for the extraction of the teeth would have increased his blood pressure much, but had a transitory effect."

Dr. G. F. Klugh testified in effect that in his opinion the blow on Kesler's head did not cause the aneurism, and did not cause his death.

This is an unusual case, and certain it is that Kesler "suffered many things" after he was wounded and prior to his death some two weeks later. Like some of the doctors, this court entertains grave doubt as to whether Kesler died from the wounds inflicted upon him by the defendant. However, this being a jury question, we are not at liberty to interfere with the verdict of the jury. Therefore, we hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

■ Special ground 1 avers that the court erred in qualifying a juror who answered that he had no bias or prejudice for or against

the prisoner at the bar, and that his mind was perfectly impartial between the State and the accused, but who, when asked if he had formed and expressed an opinion as to the guilt or innocence of the prisoner at the bar from having seen the crime committed or heard any of the evidence delivered on oath, "shook his head and said no," but stated that he had heard the case discussed a good deal and would rather not serve. The juror was not disqualified. See *Wilburn* v. *State*, 141 *Ga.* 510 (3) (81 S. E. 444), and cit.

It is averred in special ground 2 that the court erred in refusing to charge the law of involuntary manslaughter when a written request was made that such charge be given. The only written request appearing in the record is as follows: "Defendant requests that the court charge the law of involuntary manslaughter, also charge the law of stabbing, also the law of assault and battery." We think it is clear that the foregoing is not a proper written request to charge. The ground, however, raises the question that the court should have charged involuntary manslaughter without any request. Viewing the ground in this light, the court did not err in failing to charge the law in question if it was warranted only by the prisoner's statement to the jury; but he did err if any of the evidence supports the theory of involuntary manslaughter. Unquestionably, if there had been no evidence of any blow except that on Kesler's head with the defendant's fist, it would have been error for the court to fail to charge involuntary manslaughter. See, in this connection, *McDonald* v. *State*, 23 *Ga. App.* 58 (97 S. E. 448), and the cases there referred to. However, in the case at bar, the difficulty was fast and furious and quickly ended, and Kesler was severely stabbed in his left side, the wound being about an inch and a half wide and penetrating the kidney. It is true that the evidence tends to show that the death of Kesler resulted from the blow delivered by defendant's fist rather than from the wound in his side. Still, the stabbing and the blow of the fist were parts of the same sudden, short and tragic rencounter, and, to our minds, it clearly appears that the stabbing was done with deadly intent. In these circumstances, we do not think involuntary manslaughter was involved in the case, and hold that the evidence did not warrant a charge upon that subject. Therefore, we hold that the court did not err in overruling special ground

2 of the motion for a new trial. See in this connection *Daniels* v. *State*, 162 *Ga.* 366 (5) (133 S. E. 866), and cit.

*Judgment affirmed. Broyles, C. J., and Hooper, J., concur.*